[Cite as *Freeman v. Freeman*, 2016-Ohio-7565.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
LAWRENCE COUNTY

| | | |
|---|---|---|
| Teresa Ann Freeman, | : | |
| Plaintiff-Appellee, | : | Case No. 16CA14 |
| v. | : | |
| | | <u>DECISION AND</u> |
| Wendell Kent Freeman, | : | <u>JUDGMENT ENTRY</u> |
| Defendant-Appellant. | : | **RELEASED 10/24/16** |

_____

<u>APPEARANCES:</u>

Randall L. Lambert, Lambert Law Office, LLC, Ironton, Ohio for Appellant.

Brigham M. Anderson, Ironton, Ohio for Appellee.

_____

Harsha, J.

{¶1}    Wendell "Kent" Freeman appeals the trial court's decision denying his motion to find Teresa Freeman in contempt for failure to make weekly payments to him as required by a divorce decree.  The trial court denied the motion on the grounds that Kent failed to present evidence that he was entitled to the payments. The trial court determined that the decree characterized the weekly payments as salary from a marital business and Kent had failed to established that he had worked for the business during the relevant time period; therefore, he was not entitled to receive the weekly salary.

{¶2}    Our review of the record shows that the trial court did not abuse its discretion in denying Kent's contempt motion. The record contains competent, credible evidence that the weekly payments constituted salary under the divorce decree and

Kent had failed to present clear and convincing evidence that he was entitled to the salary. We affirm the trial court's judgment.

## I. FACTS

{¶3} Kent and Teresa Freeman were divorced in 2012. Under the divorce decree Teresa received the marital business, Freeman Roofing & Construction, Inc., along with its debts and assets. Wendell was to receive weekly payments of $350.00 from the business as follows:

> Defendant/Husband shall receive from the business, Freeman Roofing & Construction, Inc., payment of Three Hundred Fifty Dollars ($350.00) per week through the end of December, 2012, as and for payment of monies previously owed by the company to the Defendant/Husband. Beginning January 1, 2013, for a period of seven (7) years, the Defendant/Husband shall receive from Freeman Roofing & Construction, Inc., the sum of Three Hundred Fifty Dollars ($350.00) per week as and for salary from the company.  This salary is for payment for any consultation and/or services of the Defendant, which shall be provided to Freeman Roofing & Construction, Inc.  This payment is not cancellable by the company unless otherwise agreed by Defendant or unless the company becomes insolvent. (

{¶4} In November, 2014, Kent filed a contempt motion against Teresa in which he alleged that since January 1, 2013 up through November 2014, the company had failed to make the weekly payments due him under the divorce decree. He alleged that the company had made weekly payments for only 12 of the 90 weeks he was owed. Following an evidentiary hearing the trial court held that the weekly payments were subject to certain conditions, that Kent had stopped working for the company, and therefore the company was not required to pay him the weekly salary. However, the court noted that Kent could begin working for the company again and he would be

entitled to have the weekly salary payments resume. After the trial court denied Kent's

motion, he appealed.

## II. ASSIGNMENTS OF ERROR

**{¶5}** Wendell Kent Freeman raises two assignments of error for our review:

I.      THE TRIAL COURT ERRED IN FAILING TO FIND THE PLAINTIFF/APPELLEE IN CONTEMPT FOR FAILING TO PAY THE DEFENDANT/APPELLANT THE MONTHLY PAYMENTS OF $350.00 PER WEEK AS PREVIOUSLY ORDERED.

> A. THE TRIAL COURT'S FINDING THAT THERE WAS CONSIDERABLE AMOUNT OF DISAGREEMENT OVER WHETHER CERTAIN PAYMENTS WERE FOR REIMBURSEMENT OF EXPENSES TO THE DEFENDANT/APPELLANT AND WHETHER SUCH PAYMENTS WERE ACTUALLY DUE AND OWING WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

> B. THE TRIAL COURT'S FINDING THERE WAS CONSIDERABLE DISAGREEMENT OVER WHETHER THE COMPANY WAS IN A POSITION TO MAKE THE PAYMENTS DUE TO DEFENDANT/APPELLANT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

> C. THE TRIAL COURT ERRED IN CONCLUDING THAT THE COURT COULD NOT FIND THE PLAINTIFF/APPELLEE'S CONDUCT TO BE CONTEMPTUOUS AND SUCH WAS NOT BASED UPON ANY TESTIMONY OR FACTS PRESENTED TO THE COURT.

II.      THE TRIAL COURT ERRED IN FINDING THAT THE DIVORCE DECREE CLEARLY STATES $350.00 PER WEEK AS AND FOR SALARLY [SIC] FROM THE COMPANY REQUIRING DEFENDANT/HUSBAND TO WORK FOR THE COMPANY.

## III. LAW AND ANALYSIS

### A. Standard of Review

**{¶6}** "This court reviews a finding of civil contempt under the abuse of discretion standard." *Sheridan v. Hagglund*, 4th Dist. Meigs No. 13CA6, 2014-Ohio-4031, ¶ 19; *State ex rel. Celebrezze v. Gibbs*, 60 Ohio St.3d 69, 75, 573 N.E.2d 62 (1991).

### B. Legal Analysis

**{¶7}** Contempt may be classified as either civil or criminal depending on the court's underlying rationale and the penalty imposed. *Sheridan v. Hagglund*, *supra*, at ¶ 20; *Denovchek v. Bd. of Trumbull Cty. Commrs.*, 36 Ohio St.3d 14, 16, 520 N.E.2d 1362 (1988). Civil contempt orders seek to coerce compliance with the court's orders while criminal orders punish the party who offends the court. *See id.; Brown v. Executive 200, Inc.*, 64 Ohio St.2d 250, 253–254, 416 N.E.2d 610 (1980). "A finding of civil contempt does not require proof of purposeful, willing, or intentional violation of a trial court's prior order." *Townsend v. Townsend*, 4th Dist. Lawrence No. 08CA9, 2008–Ohio–6701, ¶ 27. "[U]nlike civil contempt, criminal contempt requires proof of a purposeful, willing, or intentional violation of a trial court's order." *Sheridan v. Hagglund,* at ¶ 20; *Delawder v. Dodson,* 4th Dist. Lawrence No. 02CA27, 2003–Ohio–2092, ¶ 10. In addition, the burdens of proof differ for the two types of contempt. For civil contempt, a trial court needs to find that an alleged contemnor has violated a court order by clear and convincing evidence, but the trial court needs to be convinced beyond a reasonable doubt to convict a contemnor of criminal contempt. *Sheridan*, *supra*; *Delawder, supra*. Here we deal with civil contempt.

**{¶8}**    We will address Kent's second assignment of error first because the trial court's interpretation of the divorce decree provides the basis for the determination of whether Kent is entitled to the weekly payments – a prerequisite to finding Teresa in contempt for failing to make them.

### C. Interpretation of the Divorce Decree: The Weekly Payments

#### 1. Standard of Review

**{¶9}**    The trial court retains "full power" to enforce the divorce decree's provisions. If the parties dispute the meaning of a provision in a decree or if the provision is ambiguous, the trial court has the power to hear the matter, to resolve the dispute, and to enforce the decree. *Evans v. Evans*, 4th Dist. Scioto No. 02CA2869, 2003-Ohio-4674, ¶ 8-10.

**{¶10}**  In *Evans, supra*, we noted a distinction in the standard of review of a trial court's interpretation of a divorce decree that incorporates the parties' separation agreement and one that does not.  *Id.* at fn. 1; *see also Monfredo v. Hillman*, 4th Dist. Lawrence No. 02CA13, 2003-Ohio-1151, ¶ 9 (written by Kline, J., with Harsha, J. concurring in judgment only because of an evidentiary issue, not the standard of review, and Evans, P.J., dissenting). Where a divorce decree incorporates the terms of the parties' separation agreement, "the normal rules of contract interpretation generally apply to ascertain the meaning of any ambiguous language. Because the interpretation of a written contract is a question of law, an appellate court reviews de novo a trial court's interpretation of the parties' separation agreement as incorporated into the divorce decree." (Citation omitted) *Evans* at ¶ 9. However, when the divorce decree

contains terms ordered by the trial court, the court's interpretation or clarification of what it intended in the decree is within the court's discretion and an abuse of discretion standard applies. *Monfredo* at ¶ 9-10.

## 2. Analysis

{¶11}  In this case the record indicates that the divorce decree was ordered by the court as opposed to being incorporated in a separation agreement. The record contains no separation agreement and the divorce decree is styled "DIVORCE DECREE." Neither party addressed in their briefs whether the divorce decree incorporated a prior separation agreement. Because the record contains no indication that the divorce decree incorporated a separation agreement, we apply the abuse of discretion standard of review.

{¶12}  An abuse of discretion involves more than an error of judgment; it implies an attitude on the part of the court that is unreasonable, unconscionable, or arbitrary. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). When applying the abuse of discretion standard, a reviewing court may not substitute its judgment for that of the trial court. *In re Jane Doe 1*, 57 Ohio St.3d 135, 137-138, 566 N.E.2d 1181 (1991).

{¶13}  Here the trial court found that the divorce decree placed contingencies on the weekly payment owed to Kent, e.g. that Kent must work for the company in exchange for the weekly $350.00 payments.  The divorce decree states: "Defendant/Husband shall receive from [the company] the sum of Three Hundred Fifty Dollars ($350.00) per week as and for salary from the company. This salary is payment

for any consultation and/or services of the Defendant, which shall be provided to [the company]." The trial court determined that under those terms Kent is to receive $350.00 per week as salary from the company in exchange for Kent's services. Thus, if Kent does not provide consulting or other services, then the company is not required to pay him a weekly salary.

{¶14} The only evidence in support of an alternative interpretation of the divorce decree was Kent's self-serving interpretation. He testified that he did not consider the $350.00 weekly payments to be income, but a settlement of his divorce and that he expected to be paid even after he stopped working for the company in March 2014. The full extent of his explanation to the court was, "that wasn't income, that was a settlement . . . It's a settlement of my divorce." Based on the record, we cannot say that the trial court's interpretation of the divorce decree is unreasonable, unconscionable, or arbitrary. Because the record contains support for the trial court's determination that the weekly payments were salary to be paid in exchange for services, we cannot rule that the decision constitutes an abuse of discretion.

{¶15} We overrule Kent's second assignment of error.

### D. Failure to Find Contempt

{¶16} In order to show civil contempt a movant must show that an alleged contemnor has violated a court order by clear and convincing evidence. *Sheridan*, *supra*; *Delawder, supra*. Because the trial court determined that the weekly payment was salary contingent upon Kent providing services to the company, Kent must show by

clear and convincing evidence that he provided consulting or other services to the company for which he was not paid.

{¶17} In Kent's contempt motion he claimed that between January 1, 2013 and the date he filed his contempt motion, 90 weeks had passed but he had only received weekly payments for 12 of the 90 weeks. Thus, he claimed he was entitled to $31,500.00 in weekly payments, but had received only $4,200. At the hearing Kent submitted a summary of payments that showed he had received a total of $32,062.12 from the company during the period. However, he claimed that only $5,250 of the $32,062.12 constituted the weekly payments – or 15 weeks' worth of payments. He characterized the remaining payments as loan repayments or expense reimbursements.

{¶18} Kent testified that he was working for the company in January 2013 and continued working there until he left in March 2014. He testified that during the period beginning in June 2013, he served as the company bookkeeper and had access to the company finances. However, he also testified that during that same period he was not working and received unemployment compensation of $400 per week for approximately one year. Although he could not remember what month he started collecting unemployment compensation and what month the compensation terminated, he submitted a monthly bank statement for May 2013 through June 2013 showing that he was receiving unemployment compensation of $400 per week during those two months. Kent testified that in March 2014, he stopped working for the company but he still believed he was entitled to receive the weekly payments.

{¶19} Kent testified that as the company bookkeeper, he wrote various checks to himself, including a check for $3,120 in December 2013, which he characterized as a loan repayment. Kent testified that he characterized many of these payments as loan paybacks or expense reimbursements that were not part of the weekly payments he alleged were due him. But on cross-examination Kent admitted that a number of the entries he made on the company ledger as the bookkeeper were inaccurate and did not correctly reflect how the monies were used.

{¶20} The record also contains evidence that the company faced insolvency problems. Kent testified that he loaned the company $7,000 in June 2013  and he gave Teresa approximately $15,000 in 2013 because the company was doing so poorly. Kent testified that when he made loans to the company, he did not have a written loan agreement, did not know when or if he would be repaid, and did not have any agreement as to an interest rate. On cross-examination Kent conceded that he did not believe the company had the ability to pay him a salary in mid-2013.

{¶21} Based on the evidence presented at the hearing, we cannot find that the trial court abused its discretion in denying Kent's contempt motion.  The record supports the trial court's findings that it was unclear whether certain payments were properly categorized as reimbursements, whether the weekly salary payments were actually due and owing at all for a period of time, and whether the company had the ability to make the payments. Kent admitted that as the company bookkeeper, he did not keep an accurate ledger. He failed to establish either (1) the time frame or number of weeks he actually worked for the company during the relevant period or (2) the time frame or

number of weeks he was unemployed and receiving unemployment compensation. The record shows that Kent worked for some portion of the relevant period but that he was also unemployed and received unemployment compensation for twelve months during some portion of the relevant period. The record also shows that the company made the weekly salary payments to Kent for a portion of the relevant time period. There was also some credible evidence that the company was insolvent during a portion of the relevant period and would have been unable to make a number of the weekly payments to Kent, assuming Kent had actually performed services for the company during that period. The trial court was not arbitrary, unreasonable, or unconscionable in deciding that Kent failed to present clear and convincing evidence that the company owed him additional weekly payments.

{¶22}  Because the record supports the trial court's decision, we find that the trial court did not abuse its discretion in denying Kent's contempt motion.

JUDGMENT AFFIRMED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Lawrence County Court of Common Pleas to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

McFarland, J. & Hoover, J.: Concur in Judgment and Opinion.


For the Court



BY: _____
        William H. Harsha, Judge




**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**